**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0892-24

GALINA BENIMOVICH,

    Plaintiff-Appellant,

v.

BOROUGH OF MONTVALE and
TOWNSHIP OF RIVER VALE,

    Defendants-Respondents.

_____

Argued November 10, 2025 – Decided January 7, 2026

Before Judges Sabatino and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-7974-21.

Kris A. Krause argued the cause for appellant (Fredson Statmore Bitterman, LLC, attorneys; Kris A. Krause, on the briefs).

Mary C. McDonnell argued the cause for respondents (Pfund McDonnell, PC, attorneys; Mary C. McDonnell, of counsel and on the brief; David T. Pfund, of counsel; David Guzik, on the brief).

PER CURIAM

The case arises from plaintiff Galina Benimovich's claim that she tripped and fell as a result of a pothole located in the roadway of her daughter's residential neighborhood, causing her to sustain injuries. Plaintiff appeals from an order entered on November 22, 2024 granting summary judgment in favor of defendants Borough of Montvale and Township of River Vale (collectively "defendants") and dismissing her personal injury complaint on the grounds she did not satisfy the requirements of the Tort Claims Act ("TCA"), N.J.S.A. 59:4-2 to -10. Plaintiff argues the court erred in granting summary judgment because several factual disputes remain, including whether the pothole in the roadway constituted a dangerous condition, particularly given the absence of a sidewalk, and whether defendants had actual or constructive notice of the condition with sufficient specificity and failed to make timely repairs to the pothole. We affirm.

I.

The relevant facts are not substantially in dispute. In May 2021, plaintiff tripped and fell in the roadway of a residential street in the Borough of Montvale while walking with her daughter. The area where plaintiff fell lacks public

A-0892-24

sidewalks and borders property owned by her daughter, Helen Merritt.[1] According to plaintiff, she tripped on a depression in the roadway and fell in such a way that she suffered a right wrist fracture and right shoulder tear, requiring surgical repair.[2]

At the time of plaintiff's fall, defendants were operating under a Shared Services Agreement, under which the Borough of Montvale dissolved its Department of Public Works ("DPW") and the Township of River Vale's DPW assumed responsibility for street repair and maintenance throughout the Borough of Montvale.[3] The Shared Services Agreement and its 2019 addendum ("the Agreement") required asphalt pothole repairs within the Borough of Montvale to be completed "[p]er the street maintenance schedule," and "[a]s reported by residents or commuters."

---

[1] Plaintiff identified the street as Hickory Hill. According to plaintiff, none of the streets surrounding Hickory Hill have sidewalks and pedestrians are forced to use the roadway, and are thus, foreseeable users of the streets.

[2] The terms "pothole" and "depression" are used interchangeably in the parties' briefs.

[3] The Agreement appointed the Township of River Vale as the lead agency responsible for ensuring that DPW services were provided to both municipalities.

A-0892-24

Soon after her fall, plaintiff retained engineer Scott D. Moore, P.E. to perform an inspection of the area where she fell. Moore authored a report in which he noted the depression in the roadway measured approximately thirty-four inches in length and thirteen inches in width, and up to one and one-half inches in depth. He concluded:

> had the subject area been adequately inspected, repaired, monitored, and maintained reasonably safe and in compliance with cited documentation, the subject depression in the roadway caused by the presence of the pothole would have been corrected and [plaintiff] would not have been caused to trip and fall and sustain injuries.
>
> Further the horrendous condition of the roadway and multiple repaired and unrepaired potholes show a clear knowledge and systemic patently unreasonable failure to make permanent and timely repairs.

After serving a tort claims notice, plaintiff sued defendants, alleging negligent failure to maintain the roadway in a safe condition and sought damages for her injuries.[4] Plaintiff invoked the TCA, alleging defendants' poor

---

[4] The TCA notice is not in the record before us but neither party disputes timely service under N.J.S.A. 59:8-8.

maintenance of the roadway created a dangerous condition that was a proximate cause of her fall and resulting injuries.[5]

Under the Shared Services Agreement, Superintendent Richard Campanelli was responsible for roadway inspection and maintenance in both municipalities. According to Campanelli and the Agreement, pothole repairs were performed as needed based on a combination of routine sweeper inspections, reports by residents, and employee observations. Defendants' records show multiple pothole complaints and repairs on Hickory Hill between 2014 and 2020, and again in 2022. However, there were no similar complaints, documents, or reports pertaining to a depression or roadway defect in 2021 around the time of plaintiff's fall.

A lengthy period of discovery ensued, with the parties conducting depositions of plaintiff and Campanelli. In his deposition, Campanelli noted that the DPW prioritized addressing larger, more serious potholes—typically hazards three to four inches deep—while shallower depressions were not deemed a priority for immediate repair and were sometimes categorized as "wish list" items rather than emergencies. For a defect to be considered an

---

[5] Neither party disputes that the pothole was the proximate cause of plaintiff's injury.

A-0892-24

"emergency" requiring urgent attention, Campanelli testified it would have to be "[o]ne that would take out a tire. One that would take [out] a bicycle. One that would cause harm to the public. Not something an inch deep." When asked what standard, if any, was used to identify hazards to pedestrians specifically on streets without sidewalks, Campanelli testified, "I can't really answer that question." As to what constitutes a pothole, Campanelli clarified, "[t]hey are typically three or four inches deep and it's the size of a pot . . . which can take out a tire or a bicycle or be considered a tripping hazard."

Moore, plaintiff's engineering expert, stated in his report that he inspected the scene and opined that any vertical elevation change exceeding one-quarter of an inch presents a tripping hazard for pedestrians, and that the subject depression far exceeded this threshold. Moore further identified evidence of pavement distress in the same location, dating back to at least 2018, and found the depression to be "a clear warning sign that the roadway's asphalt had completely failed."

In the years preceding the incident, annual pothole spreadsheets prepared by Campanelli documented several reports and repairs to potholes along Hickory Hill between 2014 and 2020. However, no report was produced for 2018, and Campanelli admitted he could not account for the missing year or

6

inconsistencies in recordkeeping. Testimony further established that DPW's Advisory Committee, specified in the Agreement to ensure quality and oversight, had not met in recent years as required.

Defendants moved for summary judgment, arguing plaintiff was unable to establish the pothole at issue constituted a dangerous condition, as required by the TCA. After the discovery end date, plaintiff filed an affidavit from her daughter, along with her opposition to defendants' motion. The affidavit stated she had lived on Hickory Hill since 2012 and had observed the depression in the roadway for years before the incident, and made multiple complaints to defendants about the condition of the roadway.

Following oral arguments on the motion, the court delivered an oral decision granting summary judgment in defendants' favor. The court found plaintiff fell and was injured, which was not disputed by defendants; and the depression in the roadway exists, although it decided it is a "mere imperfection" and does not constitute a dangerous condition. The court explained the TCA's requirements and concluded that "in a light most favorable to the nonmoving party, . . . [b]ased on the [c]ourt's review of the record here, . . . no reasonable . . . jury could find that . . . each of the criteria of the T[CA] have been or could be proven at the time of trial." Plaintiff failed to establish: (1) the depression

constituted a "dangerous condition" as defined by the TCA, (2) defendants had actual or constructive notice of the specific defect in sufficient time to remedy it, and (3) defendants' failure to remediate the depression was "palpably unreasonable" in light of resource constraints, competing priorities, and the nature and location of the roadway depression. The court found plaintiff's proofs fell short on the issue of defendants' notice of this particular pothole, and plaintiff's daughter's affidavit was "at odds with the testimony of plaintiff" regarding whether this pothole had been reported to the municipality. This appeal followed.

II.

We review the disposition of a summary judgment motion de novo, applying the same standard used by the motion judge. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Like the motion judge, we view "the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); see also R. 4:46-2(c).

A-0892-24

If "the evidence 'is so one-sided that one party must prevail as a matter of law,'" courts will "not hesitate to grant summary judgment." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). When the moving party has carried its burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Alfano v. Schaud, 429 N.J. Super. 469, 474-75 (App. Div. 2013).

As for the TCA, we are mindful "[t]he Legislature passed the TCA after [our Supreme] Court abolished the common law doctrine of sovereign immunity." Stewart v. N.J. Tpk. Auth., 249 N.J. 642, 655 (2022) (citing Vincitore ex rel. Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 124 (2001)). "In doing so, the Legislature provided that public entities could be held liable for negligence 'within the limitations of [the TCA].'" Ibid. (alteration in original) (quoting N.J.S.A. 59:1-2). "[T]he 'guiding principle' of the [TCA] is 'that immunity from tort liability is the general rule and liability is the exception.'" D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013) (quoting Coyne v. DOT, 182 N.J. 481, 488 (2005)) (additional quotations omitted).

Under the TCA, a public entity may be liable for a personal injury caused by the "dangerous condition" of its public property. N.J.S.A. 59:4-2. "The applicable standards for dangerous condition liability under the TCA are well established. To recover for an injury under the general liability section of the TCA, N.J.S.A. 59:4-2, a plaintiff must prove several elements." Estate of Massi v. Barr, 479 N.J. Super. 144, 156 (App. Div. 2024). The statute prescribes:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that [(1)] the property was in dangerous condition at the time of the injury, [(2)] that the injury was proximately caused by the dangerous condition, [(3)] that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and [(4)] that either:
>
> a.  a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b.  a public entity had actual or constructive notice of the dangerous condition under [N.J.S.A.] 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
>
> [N.J.S.A. 59:4-2.]

A-0892-24

To plead a prima facie case under the TCA, plaintiff must show: (1) the area of Hickory Hill where she fell was in a "dangerous condition" at the time of her fall; (2) the injury was proximately caused by the dangerous condition; (3) the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred; and (4) either that a wrongful act or omission of a defendant employee, acting within the scope of employment, created the dangerous condition, or that defendants had actual or constructive notice of the dangerous condition and sufficient time prior to the injury to protect against it. N.J.S.A. 59:4-2. Additionally, plaintiff must show that the defendants' action or inaction regarding the allegedly dangerous condition was "palpably unreasonable." Ibid.

Plaintiff begins by challenging the court's grant of summary judgment, arguing defendants do not meet the applicable standard under Rule 4:46-2 and the competent evidence and affidavits presented were sufficient to meet the foreseeable risk requirement of the TCA. In other words, plaintiff contends she produced sufficient evidence to satisfy each element required for liability under the TCA.

On the issue of foreseeability, plaintiff avers that because there are no sidewalks in the area and she was forced to walk in the roadway, she was a

11

foreseeable user of the roadway. She argues the court's reliance on our Supreme Court's holding in Polzo v. Cnty. of Essex, 209 N.J. 51 (2012), "in reaching its determination that [she] was not a foreseeable user of Hickory Hill" constitutes error. Plaintiff avers that unlike the bicyclist who was struck and killed while riding on the shoulder of the roadway in Polzo, she had no choice [but] to use the roadway as there were no sidewalks or shoulders on Hickory Hill. She maintains "[t]his is an entirely different set of facts than those that formed the basis of the Polzo opinion, and the [t]rial [c]ourt erred in relying on Polzo over the more analogous [Atalese v. Long Beach Tp., 365 N.J. Super. 1 (App. Div. 2003)] case when determining whether [p]laintiff walking as a pedestrian was a foreseeable use of the Hickory Hill roadway."

Plaintiff further maintains the "[c]ourt erred when it relied upon cases with distinguishable fact patterns, and ignored the uncontested expert opinion of [her] engineer," that the pothole in question constituted a dangerous condition. Relying on the Court's holding in Atalese, where we found a three-fourths inch depression in a roadway sufficient to constitute a dangerous condition, plaintiff asserts the fact that the potholes on Hickory Hill were reoccurring, as evidenced by the municipal records, is sufficient to establish defendants had constructive notice of the dangerous condition in the roadway. Plaintiff further contends

12

defendants engaged in palpably unreasonable conduct insofar as they "enacted a system whereby only one person would keep records of . . . complaints and that same person would be the final say as to whether any complaints were addressed or ignored," and the lack of any "standard to evaluate or prioritize [defendant's] response to complaints of tripping hazards."

We first address the question whether plaintiff established the depression or pothole on the roadway that caused her injury constitutes a dangerous condition under the TCA. The TCA defines a "dangerous condition" of property as a condition that "creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a). A "substantial risk" is "one that is not minor, trivial or insignificant." Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985) (quoting Polyard v. Terry, 160 N.J. Super. 497, 509 (App. Div. 1978)). If it can be shown that public property is safe unless foreseeable users fail to exercise due care, then there is no dangerous condition for purposes of the TCA. Garrison v. Twp. of Middletown, 154 N.J. 282, 290 (1998). Moreover, where the "physical characteristics" of the property would "reasonably notify prospective users that their proposed activity will be hazardous, then the plaintiff's engagement in that

13

activity is not an exercise of due care under N.J.S.A. 59:4-1 and -2." Estate of Massi, 479 N.J. Super. at 158.

Proof of notice of a dangerous condition present on public property is also an essential element for premises liability under the TCA. Actual notice is proven if the public entity had "actual knowledge of the existence of the condition and knew or should have known of its dangerous character." N.J.S.A. 59:4-3(a). Alternatively, constructive notice is satisfied if the plaintiff shows "the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." N.J.S.A. 59:4-3(b); see also Chatman v. Hall, 128 N.J. 394, 418 (1992). "The mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)).

Beyond these requirements, dangerous condition liability under the TCA obligates a plaintiff to prove that the public entity's failure to protect against the danger was "palpably unreasonable." N.J.S.A. 59:4-2. The Supreme Court has explained "the term implies behavior that is patently unacceptable under any given circumstance." Kolitch, 100 N.J. at 493. "[I]t must be manifest and

obvious that no prudent person would approve of [the public entity's] course of action or inaction." Ibid. (quoting Polyard, 148 N.J. Super. at 216); see also Gonzalez by Gonzalez v. City of Jersey City, 247 N.J. 551, 576 (2021). The burden of proving a public entity defendant acted in a palpably unreasonable manner is on the plaintiff. Coyne v. State Dep't of Transp., 182 N.J. 481, 493 (2005).

Based on our de novo review and applying the well-settled legal principles enunciated above, we discern no error in the motion court's grant of summary judgment in defendants' favor. The court based its decision on plaintiff's failure to establish the putative pothole constituted a dangerous condition, as defined by the TCA, and the lack of credible evidence that defendants had actual or constructive notice of the pothole that caused her injury and failed to remediate any alleged danger posed by its location.

Plaintiff offers the following arguments in support of her position. First, she posits that a "dangerous condition" is established because of the depth of the depression in her case exceeded the depression deemed to constitute a "dangerous condition" in Atalese. More particularly, she argues "there was no dispute . . . that the depression that [caused her] to fall measured approximately 34" in length, 13" in width, and up to 1 1/2" in depth," whereas in Atalese, we

15

found a roadway depression of 3/4" deep constituted a dangerous condition for a pedestrian." Additionally, she argues that defendants' process for handling pothole complaints is indicative of defendants' inadequate maintenance and inspections. With regard to Campanelli's testimony, she maintains he had no standard as to whether or not a pothole was a danger for a pedestrian walking, especially on residential streets without sidewalks when pedestrian use is foreseeable.

The court found plaintiff's argument surrounding Campanelli's process for handling pothole complaints insufficient to satisfy the TCA's actual or constructive notice requirements. Although plaintiff submitted municipal records showing repeated reports and repairs of potholes in the area, including on Hickory Hill, the court concluded those records did not establish that the specific pothole where plaintiff fell had been reported to the municipality.

We are satisfied that the evidence of the existence of an alleged dangerous condition elsewhere or on prior dates is not sufficient constructive notice of the condition that caused plaintiff's injury. See Arroyo, 433 N.J. Super. at 243. Moreover, the municipal pothole records and affidavit offered by plaintiff did not establish when the pothole formed, how long it had been in the roadway, or if or when it had been reported to defendants. At most, plaintiff's proofs

16

suggested general notice of recurring potholes on the roadway in the area where plaintiff fell. Such proofs are therefore insufficient to establish defendants had notice of the specific dangerous condition where plaintiff fell as required by the TCA.

We further discern plaintiff could not establish that a pothole, even one with a "height as much as a 1 1/2 inches" in depth as her expert concluded constitutes a dangerous condition as a matter of law—as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a). To be considered a "substantial risk of injury," a condition of property cannot be minor, trivial, or insignificant. Stewart, 249 N.J. at 656 (citing Kolitch, 100 N.J. at 493).

Here, even though some pedestrian use of Hickory Hill was foreseeable given that the roadway bordered plaintiff's daughter's home, the roadway nevertheless remains a street principally constructed for vehicular traffic and any defect in the property cannot be viewed in a vacuum and must be considered together with the anticipated use of the property to determine whether the condition creates a substantial risk of injury. See Atalese, 365 N.J. Super. at 5. Moreover, the TCA, however, does not mandate public entities retrofit or

17

redesign roadways to accommodate pedestrian travel merely because sidewalks are absent. See Polzo, 209 N.J. at 71 (recognizing that certain roadways are primarily designed for vehicular traffic only, even where pedestrian use of a roadway without sidewalks may be foreseeable). Further, foreseeability of pedestrian use alone does not establish liability where the condition alleged is inherent in the nature of the roadway itself. See id. at 71-73. And, because roadways are reasonably expected to contain potholes, the presence of potholes on the roadway does not create an inherently dangerous condition. Polzo, 209 N.J. at 66-67.

On the issue of notice of the alleged dangerous condition, plaintiff asserts notice is evident from the years of complaints about potholes in the roadway as depicted in municipal records. Plaintiff also argues that defendant's conduct was palpably unreasonable in light of their failure to implement a pedestrian-safety system on streets known for chronic hazards, coupled with the DPW Superintendent's own acknowledgment of its discretion in evaluating repair priorities. In plaintiff's deposition testimony, she stated that she was walking on the roadway with her daughter in the afternoon, around 2:00 or 3:00 PM, when she stepped into a pothole injuring herself. Plaintiff maintains that the roadway was known to have potholes by virtue of several prior reports to

18

defendants. Although defendants do not dispute that there were a number of potholes in the roadway around where plaintiff fell—both in the past and present—the question before us is whether plaintiff pleaded a genuine issue of material fact that defendants had prior actual or constructive notice of the pothole that caused her injury.

On this issue, the court found "no proof of actual notice here of th[e] particular depression or pothole" and plaintiff's proof fell short of the type of proofs required to defeat summary judgment: "that would establish that, in fact, [the Borough of Montvale] had notice of this particular pothole, and either ignored [it] . . . or remedied it in the past." Addressing the statements made by plaintiff's daughter in her affidavit that she had notified the municipality numerous times about the depression or pothole in the roadway, the court noted the lack of proofs of any such report around the time of plaintiff's fall.

Constructive notice may be found where a defect is "so obvious that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." N.J.S.A. 59:4-3(b). Here, plaintiff points to years of chronic pothole complaints and the pattern of incomplete recordkeeping as evidence the municipality should have known about persistent hazards on the

19

street. Defendants counter that neither the general knowledge of problems nor past repairs are sufficient to establish notice of this particular depression.

The court, however, found the evidence of notice lacking, both because the only direct allegation—the Merritt affidavit—was introduced following the conclusion of discovery in plaintiff's response to defendants' summary judgment motion, and also because municipal records did not substantiate that notice was provided about this specific depression.

The court concluded "plaintiff has not met the burden with respect to the issue of constructive notice based on the lack of

> competent evidence that [defendants] were put on notice or knew that there was a depression on which the plaintiff fell . . . Or that there was a sufficient amount of time for the municipality in an exercise of due care to discover the condition, and its dangerous character, . . . the criteria that is required to be shown in N.J.S.A. 59:4-3(b).

Like the motion court, we are unpersuaded by plaintiff's argument defendants had actual notice or constructive notice of the pothole based on prior complaints contained in the Borough records. We reach this determination based on our review of the record, which lacks proof of plaintiff's claim that the pothole that caused her injury had been the subject of any prior complaints. Relatedly, plaintiff cannot show how long the pothole was in existence on the

20

roadway, or that defendants failed to repair the roadway in a reasonable timeframe, resulting in her injury. And, as highlighted by defendants, no pothole complaints matching the subject depression were found in DPW records for the relevant period. See Garrison, 154 N.J. 282 at 311 (finding where there is no evidence of prior injuries or complaints involving a particular declivity, "[n]o evidence exists in this record that would allow reasonable jurors to conclude that [a municipality's] inaction . . . was patently unacceptable in a way so manifest and obvious that no prudent person would approve of its inaction.").

Moreover, our Court previously recognized the maintenance burden on public entities, while underscoring that a plaintiff on the roadway must use due care when confronting a visible hazardous potholed surface in Estate of Massi, 479 N.J. at 172. Estate of Massi involved a roadway bicyclist who swerved to avoid a truck, instead hitting a pothole and injuring himself. There, our Court held "due care" under the TCA "requires analysis of the 'objectively reasonable' conduct of those who use the property." Id. at 157 (quoting Garrison, 154 N.J. at 291). In other words, to find the use of due care is to question "whether the property poses a danger to the general public when used in the normal, foreseeable [and objectively reasonable] manner." Ibid. (quoting Vincitore, 169 N.J. at 126).

A-0892-24

Here, we conclude that plaintiff failed to present competent evidence that would permit a rational factfinder to determine whether defendants had actual or constructive notice of the specific depression that caused her fall, or that defendants' failure to make repairs was itself palpably unreasonable. Plaintiff fails to demonstrate that this particular defect was reported to defendants and that they had sufficient time to take corrective action.

Additionally, even though Campanelli admitted that certain road maintenance records from around the time of plaintiff's fall were missing, it is plaintiff's burden to establish the elements of her claim. N.J.S.A. 59:4-2. We further note the Merritt affidavit stated only that "[f]or years prior to [plaintiff's] fall, [(the affiant)] personally complained of the pothole that caused [plaintiff] to fall and requested that the Pascack Valley Department of Public Works repair it." Notably, the affidavit, introduced after the close of discovery, contained only conclusory statements of notice and lacked corroboration or supporting details about reports made to the municipality regarding the defect, including clear evidence of the date or length of time the pothole existed. Thus, the motion court properly found plaintiff's belated affidavit insufficient to establish actual or constructive notice of the alleged dangerous condition in the roadway.

A-0892-24

Lastly, we note that even if plaintiff established that the pothole in the roadway constituted a dangerous condition, a reasonable jury still could not find that the failure to repair it was "palpably unreasonable." N.J.S.A. 59:4-2 ("[the statute] shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action . . . was not palpably unreasonable."). To be palpably unreasonable, defendant's inaction must be so lacking in justification as to be "patently unacceptable under any circumstances" and so "manifest and obvious that no prudent person would approve." Kolitch, 100 N.J. at 493.

Plaintiff maintains defendants' failure to implement a robust system for repairing roadway defects on Hickory Hill, especially given the extensive history of potholes and lack of sidewalks for pedestrian safety, constitutes palpably unreasonable conduct. The court, however, disagreed, citing Polzo's warning against judicial micromanagement of municipal inspection and repair programs, and noting the lack of any established standard requiring more rigorous inspection or different prioritization. See 206 N.J. at 75-76.

Defendants are unquestionably responsible for maintaining the more than 8 miles of roadway spanning the Borough of Montvale and Township of River Vale pursuant to the Shared Services Agreement. However, plaintiff cannot

establish that defendants' failure to repair the roadway was "palpably unreasonable;" because she cannot show on this record defendants' actions were so lacking in justification and patently unacceptable under any circumstances. Kolitch, 100 N.J. at 493. We reach this conclusion notwithstanding plaintiff's argument the roadway in question was plagued by reoccurring depressions and potholes. Even so, municipal records confirm defendants had previously completed pothole repairs to the roadway in the Hickory Hill area between 2014 and 2022. Absent evidence of egregious neglect or disregard of obvious, reported hazards, courts are generally hesitant to find municipal actions palpably unreasonable. Polzo, 209 N.J. at 76. Moreover, in a world of limited public resources, it is well settled that municipalities may prioritize more urgent roadway hazards. Id. at 77-78. Thus, we cannot conclude that defendants acted in a palpably unreasonable manner by failing to protect plaintiff against the specific pothole that caused her injury.

In sum, based on our de novo review, defendants are entitled to summary judgment as a matter of law under the TCA as plaintiff failed to establish the requisite elements of her claim. Specifically, plaintiff did not present evidence that the roadway constituted a dangerous condition under N.J.S.A. 59:4-1, demonstrate that defendants had actual or constructive notice of the specific

24

defect, or show how defendants' conduct in failing to remedy it was palpably unreasonable under N.J.S.A. 59:4-2.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0892-24